


FILED

Jul 15 2026, 9:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

OJL QRP, LLC,

*Appellant-Defendant*

v.

IN 123 Rentals LLC,

*Appellee-Plaintiff*

---

July 15, 2026

Court of Appeals Case No.
25A-CE-3217

Appeal from the Lake Superior Court

The Honorable John M. Sedia, Judge

Trial Court Cause No.
45D01-2508-CE-59

---

**Opinion by Chief Judge Tavitas**
Judges Bradford and Felix concur.

**Tavitas, Chief Judge.**

## Case Summary

IN 123 Rentals, LLC ("IN 123") filed a complaint against OJL QRP, LLC ("OJL"), seeking specific performance of a lease-to-purchase option agreement ("Agreement"). OJL's attorney entered an appearance five days after the deadline to answer IN 123's complaint, and IN 123 moved for default judgment. OJL opposed the motion and sought an enlargement of time, arguing excusable neglect based on a breakdown in communication. The trial court granted default judgment to IN 123. OJL appeals, and we reverse and remand.

## Issue

OJL raises one issue, which we restate as whether the trial court abused its discretion by granting IN 123's motion for default judgment and effectively denying OJL's motion for enlargement of time.[1]

## Facts

OJL and IN 123 were parties to the Agreement dated October 20, 2020, concerning real property located in Gary. Under the Agreement, IN 123 was

---

[1] In its order, the trial court granted only the relief requested by IN 123, including default judgment, and did not expressly rule on OJL's motion for enlargement of time. The trial court, however, expressly rejected OJL's argument of excusable neglect that the delayed pleading resulted from a breakdown in communication between OJL and its attorney. We, therefore, construe the order as denying OJL's motion for enlargement of time.

the lessee with an option to purchase, and OJL was the lessor. On August 20, 2025, IN 123 filed a complaint against OJL seeking specific performance of the Agreement to purchase the real property. IN 123 served the complaint and summons on OJL by certified mail on August 26, 2025. A responsive pleading was due on or before September 18, 2025.

[4] OJL had previously been represented in Indiana real estate litigation by Attorney Tramel Raggs. At the time of those prior representations, Attorney Raggs was associated with Harris Law Firm, P.C., and used an email address at that firm. On August 30, 2025, however, Attorney Raggs separated from Harris Law Firm, P.C., to begin his own practice. After OJL was served with the complaint, OJL forwarded correspondence regarding the lawsuit to Attorney Raggs at the firm email address it had on file, as it had done in prior matters. That email address, however, was no longer in use or actively monitored.[2] OJL subsequently made contact with Attorney Raggs and retained him in the matter, and Attorney Raggs entered his appearance for OJL on September 23, 2025, which was five days after the deadline to file a responsive pleading.

[5] On September 24, 2025, the day after Attorney Raggs entered his appearance, IN 123 filed a motion for default judgment, asserting that OJL had failed to file a timely responsive pleading. On October 9, 2025, OJL filed a response in

---

[2] The record does not contain the specific date on which OJL successfully contacted Attorney Raggs and retained him in this matter. In OJL's unverified motion in opposition to default judgment, OJL asserted that its initial contact with Attorney Raggs was made "[p]rior to that [] due date, but after service of the Complaint." Appellant's App. Vol. II p. 22. IN 123 did not dispute this fact.

opposition to the motion for default judgment and a motion for enlargement of time to file a responsive pleading pursuant to Indiana Trial Rule 6(C)(2). *See* Appellant's App. Vol. II p. 3. OJL argued that its failure to timely respond resulted from "excusable neglect," namely, a "breakdown in communication" between OJL and Attorney Raggs after he departed from his prior firm. Tr. Vol. II pp. 6-7.

[6] On December 11, 2025, the trial court held a hearing on the motions, at which both parties appeared by counsel and presented argument. On December 12, 2025, the trial court entered an order granting IN 123's motion for default judgment, which effectively denied OJL's motion for enlargement of time. The trial court's order expressly rejected OJL's excusable neglect argument, and stated in its written order, "[i]f being a CPA during tax season and COVID-19 concerns or being a doctor and failing to read email are insufficient to overcome the burden to demonstrate entitlement to relief from judgment . . . so too is OJL's lack of diligence in ascertaining its counsel's whereabouts and timely contacting him." Appellant's App. Vol. II p. 7. IN 123 did not challenge Attorney Raggs's statements regarding the delay at the hearing, and the trial court accepted those facts as true in its written order. *See id*. at 3 n.1.

[7] The trial court's order required OJL to close on the property within ten days, awarded IN 123 court costs, and preserved IN 123's ability to seek additional damages, including attorney fees, after closing. *Id.* at 7-8. On December 18,

2025, OJL filed a Motion to Stay Judgment Pending Appeal.[3] *Id.* at 4. OJL filed its Notice of Appeal on December 19, 2025. *Id.* IN 123 represents on appeal that the parties closed on the property on December 22, 2025, within the ten-day period allowed by the default judgment for completing the transaction, and that the deed was recorded on January 29, 2026.[4] *See* Appellee's Br. p. 13.

## Discussion and Decision

### Standard of Review

[8] The parties dispute the standard of review governing this appeal. OJL argues that we should review this appeal de novo because the trial court reached its decision on a paper record and without evidentiary hearing. IN 123 argues that the trial court held a hearing at which OJL presented its argument and that, thus, the proper standard is abuse of discretion. We agree with IN 123. "Our standard of review for a trial court's decision regarding a default judgment is well-settled." *Whetstine v. Menard, Inc.*, 161 N.E.3d 1274, 1279 (Ind. Ct. App. 2020). "We review a trial court's decision to enter a default judgment for an abuse of discretion." *Expert Pool Builders, LLC v. Vangundy*, 224 N.E.3d 309, 312 (Ind. 2024).

---

[3] The trial court granted OJL's Motion to Stay the Default Judgment on March 24, 2026, more than three months after OJL filed its Notice of Appeal.

[4] These events are not reflected in the record on appeal. We recount IN 123's representations only to frame its mootness argument.

[9] Here, the trial court held a hearing at which both parties, through counsel, had the opportunity to present their arguments. OJL argued that the belated pleading resulted from a breakdown in communication between OJL and Attorney Raggs and argued that this breakdown constituted excusable neglect under Indiana law. OJL explained that Attorney Raggs was associated with his former firm when the case was filed, he left that firm to start his own practice, and all subsequent correspondence continued to be sent to his previous firm. IN 123 did not dispute the facts OJL presented, and the trial court, in its written order, accepted those asserted facts as true. *See* Appellant's App. Vol. II p. 7 n.1.

[10] The trial court did not rule on the motions purely based on a paper record; instead, it had the opportunity to consider the merits of the parties' arguments. As our Supreme Court explained in *Expert Pool Builders*, "the trial court evaluates firsthand the relevant facts of each case and is in the best position to manage its docket, to balance the equities, and to determine the appropriate use of [default judgment]." 224 N.E.3d at 312. "Under an abuse of discretion review, '[w]e presume that the trial court will act in accord with what is fair and equitable in each case, and thus we will only reverse if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law.'" *DePuy Orthopaedics, Inc. v. Brown*, 29 N.E.3d 729, 731-32 (Ind. 2015) (quoting *Wright v. Miller,* 989 N.E.2d 324, 330 (Ind. 2013)). Thus, we conclude that the proper standard of review is abuse of discretion.

## I.  This appeal is not moot although the underlying property has been sold.

IN 123 urges the Court to be "mindful" that the property at issue has been sold to IN 123 and that the Warranty Deed has been recorded in Lake County. Appellee's Br. p. 13.  IN 123 argues that this "critical fact" renders the current appeal moot because no meaningful relief remains available to OJL.  *Id.*  We disagree.

Before addressing the legal merits of IN 123's mootness argument, we note that certain factual assertions in IN 123's brief are inconsistent with the record.  IN 123 contends that the property "was sold and conveyed to a bona fide third-party purchaser before OJL even filed its Notice of Appeal."  Appellee's Br. p. 13.  That contention is inconsistent with the timeline reflected in the record and the chronological case summary ("CCS"), it also conflicts with IN 123's own statement elsewhere in its brief. [5]  OJL conveyed the property on December 22, 2025, as IN 123 acknowledges, but OJL filed its Notice of Appeal on December 19, 2025—three days before the conveyance.  OJL, moreover, filed its Motion to Stay the Default Judgment with the trial court on December 18, 2025, prior to the conveyance.

---

[5] IN 123 states in its appellate brief that OJL conveyed the property to it on "December 22, 2025." Appellee's Br. p. 13.  As a party to the pending litigation, IN 123 was on notice of the relevant filing dates, including that OJL filed its Notice of Appeal on December 19, 2025, before the asserted conveyance date.

[13] IN 123 argues that the "sequence of events" is legally significant because it would be "fatal to any meaningful relief OJL could obtain on appeal." Appellee's Br. p. 13. In other words, IN 123's mootness argument rests on the "critical fact" that OJL conveyed the property *before* filing its appeal, implying that OJL voluntarily complied with the trial court's default judgment order. *Id.* The record reflects otherwise. OJL filed its Notice of Appeal first and then conveyed the property on the final day of the ten-day window prescribed by the default judgment, in compliance with the trial court's order. That conveyance was not a voluntary transfer; rather, it was compelled by a standing court order. The appeal, accordingly, is not necessarily moot. *McConnell v. Thomson*, 8 N.E.2d 986, 992 (Ind. 1937) (holding that transfer of money or property, as by executing a deed, in obedience to a judgment does not constitute a waiver of the right to appeal therefrom); *cf. Plan Comm'n for Floyd Cnty. v. Klein*, 765 N.E.2d 632, 643 (Ind. Ct. App. 2002) (concluding that an appeal was moot where the appealing party voluntarily acquiesced in the judgment by acting on it before challenging it).

[14] Next, IN 123 describes itself as a "bona fide third-party purchaser" of the underlying property. Appellee's Br. p. 13. That description contradicts IN 123's characterization of the transaction. The property was conveyed to IN 123 by OJL in compliance with the trial court's default judgment order, and IN 123 was the grantee in that conveyance—not a third party. Nor is IN 123 a bona fide purchaser. To qualify as a bona fide purchaser, one must purchase "in good faith, for a valuable consideration, and without notice of the outstanding

rights of others." *Pond v. McNellis*, 845 N.E.2d 1043, 1058 (Ind. Ct. App. 2006) (quoting *Keybank Nat'l Ass'n v. NBD Bank*, 699 N.E.2d 322, 327 (Ind. Ct. App. 1998)), *trans. denied*. The law recognizes both actual and constructive notice. *Id.*

[15] IN 123 initiated and litigated this dispute, obtained the judgment under which the property was conveyed, and took title while OJL's appeal of that judgment was pending. A party whose title rests upon a judgment is charged with notice of the incidents to which the judgment is subject, including a pending appeal. *See Pond*, 845 N.E.2d at 1059; *Dunnington v. Elston*, 101 Ind. 373, 374-75 (1885). IN 123, therefore, took title with notice of OJL's outstanding rights and cannot claim the protected status of a bona fide purchaser. Meaningful relief, moreover, remained available to OJL. OJL filed its Motion to Stay the Default Judgment before obeying the trial court's order.

[16] Indiana has long followed the principle that, "if [a] judgment [is] *reversed*, the party shall be restored to all that he has lost by occasion of the judgment, and a writ of restitution shall be awarded." *Martin v. Woodruff*, 2 Ind. 237, 238 (1850) (emphasis in original). Even where the specific property cannot be restored, Indiana law affords a monetary remedy: a party who received a benefit under a judgment later reversed must make restitution of the value of what was lost. *Smith v. Zent*, 83 Ind. 86, 87-88 (1882) (recognizing that, where property sold under a reversed judgment has passed beyond reach, the owner may recover its value as a "money equivalent"). A court of equity may also fashion other relief, including reformation of the transaction rather than complete rescission where

appropriate. *Strong v. Jackson*, 777 N.E.2d 1141, 1150 (Ind. Ct. App. 2002) (recognizing a court of equity's authority to reform a deed, rescind a transfer, or impose a constructive trust to remedy a wrongful conveyance, and affirming reformation of a recorded deed to grant an equitable life estate), *aff'd on reh'g*, 781 N.E.2d 770 (Ind. Ct. App. 2003). Accordingly, a meaningful remedy remains available for OJL, and thus this appeal is not moot.

## II. The trial court abused its discretion in granting the default judgment and denying the motion for enlargement of time.

[17] Generally, Indiana Trial Rule 55(C) provides the framework to challenge the default judgment through filing a motion to set aside the default judgment under Trial Rule 60(B). Our Supreme Court recently clarified that Rule 60(B) motion is not required to preserved the party's right to appeal a default judgment as long as the party sufficiently preserved its argument for appellate review. *Expert Pool Builders*, 224 N.E.3d at 313. A party that opposes a motion for default judgment before the judgment is entered and obtains a definitive ruling from the trial court preserves its challenge for appeal and is not required to file a motion to set aside the default judgment under Indiana Trial Rule 60(B) before seeking appellate review. *Id.*

[18] OJL opposed IN 123's motion for default judgment in writing on October 9, 2025, approximately two weeks after the motion was filed. OJL also opposed default judgment orally at the December 11, 2025, hearing, before the trial court entered default judgment on December 12, 2025. OJL appeals directly from that judgment. OJL, thus, preserved its challenge for our review.

Indiana Trial Procedure Rule 6(C) provides,

> Except for the automatic enlargement of time allowed in subdivision (B)[6], when an act is required or allowed to be done at or within a specific time by these rules, the court may upon motion:

> \* \* \* \* \*

> (2) if the request is made after the time has expired, order the time enlarged where the failure to act was the result of **excusable neglect**. However, the court may not extend the time under Rules 50(A), 52(B), 56, 59(C), 59(E), or 60(B), except as stated in those rules.

(emphasis added). Black's Law Dictionary defines "excusable neglect" as

> A failure — which the law will excuse — to take some proper step at the proper time (esp. in neglecting to answer a lawsuit) not because of the party's own carelessness, inattention, or willful disregard of the court's process, but because of some unexpected or unavoidable hindrance or accident or because of reliance on the care and vigilance of the party's counsel or on a promise made by the adverse party.

---

[6] To qualify for the automatic enlargement of time under Trial Procedure Rule 6(B), the party must file the motion before the original due date.

BLACK'S LAW DICTIONARY (12th ed. 2024). Although "Indiana case law interpreting excusable neglect in the context of [Trial Rule 6(C)][7] is scarce," authority construing Trial Rule 60(B) may be instructive because both rules employ the same term. *Bosamia v. Marion Cnty. Assessor*, 969 N.E.2d 635, 638 (Ind. T.C. 2012).

[20] Indiana Trial Procedure Rule 60(B) is typically invoked in the context of setting aside a default judgment *after* it has been entered. Rule 60(B) provides, "[o]n motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default, for the following reasons[,]" including "mistake, surprise, or **excusable neglect**." (emphasis added).

[21] There is no general rule in Indiana as to what constitutes excusable neglect. Our Supreme Court has explained that it "has not enunciated a general definition of excusable neglect. Rather, the decisions are made on a case-by-case basis." *In re Marriage of Ransom*, 531 N.E.2d 1171, 1172 (Ind. 1988). Our Supreme Court has also recognized that a breakdown in communication may constitute excusable neglect. *Whittaker v. Dail*, 584 N.E.2d 1084, 1087 (Ind. 1992).

---

[7] Effective January 1, 2025, our Supreme Court amended and reorganized Indiana Trial Rule 6. The provision permitting enlargement of time after expiration upon a showing of excusable neglect, formerly designated as Trial Rule 6(B)(2), now appears in Trial Rule 6(C)(2). OJL filed its motion asserting excusable neglect in October 2025; we, therefore, apply and cite the amended version of the rule in effect at that time. The quoted authority refers to the provision under its prior designation.

[22] In *Whittaker*, the defendant failed to appear for trial after he contacted his insurance carrier and reasonably believed that the carrier would retain counsel to defend him; a miscommunication between the carrier and the law firm, however, resulted in no attorney appearing on his behalf. *Id*. at 1086-87. Our Supreme Court held that, where unchallenged and credible testimony establishes a breakdown in communication that results in a party's failure to appear, the grounds for setting aside a default judgment are satisfied. *Id*. at 1087. The Court concluded that the trial court abused its discretion by denying the defendant's motion to set aside the default judgment. *Id*.

[23] Similarly, in *Whelchel v. Community Hospitals of Indiana, Inc.*, 629 N.E.2d 900 (Ind. Ct. App. 1994), this Court found a breakdown in communication between a litigant and her counsel to constitute excusable neglect. The defendant was served with two separate lawsuits on the same day and forwarded the documents to her attorney; the attorney, however, was alerted to only one of the two actions, appeared in that matter alone, and a default judgment was entered against the defendant in the other matter. *Id*. at 902. This Court determined that, although the precise source of the breakdown was unclear, the defendant's counsel would have promptly appeared in the second matter but for the misunderstanding, just as he had in the first. *Id*. at 903. This Court held, accordingly, that the trial court abused its discretion by concluding that the defendant's failure to appear was not the result of excusable neglect. *Id*. at 904.

[24] Our Supreme Court has, by contrast, declined to find excusable neglect where a party's failure to respond stemmed from inattention. In *Smith v. Johnston*, a

physician and his surgical group were sued for medical malpractice, and the summons was served at the office on January 11, 1996, where a scrub nurse signed for it. 711 N.E.2d 1259, 1261 (Ind. 1999). The office manager was in the process of leaving the group and was absent when the summons arrived; the scrub nurse placed the summons on the physician's desk, and the physician did not open it until six days after a default judgment of $750,000 had been entered against him and his group on March 22, 1996. *Id*. at 1261-62. Our Supreme Court characterized this failure as "neglect, but not excusable neglect," observing that the physician knew his mail was unattended and accepted the risk of adverse consequences. *Id*.

[25] Our Supreme Court reached a similar conclusion in *Huntington National Bank v. Car-X Associates Corp.*, 39 N.E.3d 652 (Ind. 2015). There, the employee who normally received service for the bank was absent, and the employee who received the complaint in her stead did not refer it to counsel until twenty-eight days later. The employee based the failure on the volume of his other duties. *Id*. at 657-58. Our Supreme Court held that this failure did not constitute excusable neglect, reasoning that the untimely response was attributable to the bank's own inattentiveness.[8] *Id*.

---

[8] The Court, however, remanded for the trial court to consider whether equitable relief was warranted under Trial Rule 60(B)(8), in light of the bank's meritorious defense, the substantial sum at issue, and the absence of prejudice. *Huntington National Bank*, 39 N.E.3d at 658-59.

[26]     These cases are distinguishable from the case at hand because *Smith* and *Huntington* involved a party's internal neglect, whereas this case involves a breakdown of communication between OJL and the attorney on whom OJL reasonably relied. Here, OJL did not simply ignore the complaint, neglect to read its mail, or allow service to sit unattended within its own office. OJL forwarded its correspondence regarding the pending litigation to Attorney Raggs without knowledge that Attorney Raggs was in the process of leaving Harris Law Firm, P.C. OJL sent the correspondence to Attorney Raggs's former firm email address, which Attorney Raggs no longer monitored. The record does not demonstrate how Attorney Raggs's former firm handled the summons or how the firm communicated with Attorney Raggs. The precise mechanism of the miscommunication is unclear.

[27]     Attorney Raggs had also previously represented OJL in other legal matters, and OJL reasonably relied upon that past experience in concluding that forwarding the litigation correspondence to the email address OJL had on file would suffice and that Attorney Raggs would proceed from there. OJL, moreover, exercised reasonable diligence by contacting Attorney Raggs rather than remaining inactive or inattentive. After OJL successfully contacted Attorney Raggs, Attorney Raggs entered his appearance on September 23, 2025, only five days after the September 18, 2025, deadline for a responsive pleading. IN 123 moved for default judgment the following day, and OJL later filed its response in opposition and motion for enlargement of time.

[28]    Even though the trial court accepted the facts presented by Attorney Raggs at the hearing as true, it found that the breakdown in communication did not constitute excusable neglect. *See* Appellant's App. Vol. II p. 7. "Indiana law strongly prefers disposition of cases on their merits." *Front Row Motors, LLC v. Jones*, 5 N.E.3d 753, 758 (Ind. 2014) (quoting *Coslett v. Weddle Bros. Const. Co.*, 798 N.E.2d 859, 861 (Ind. 2003)).[9] Any doubt of the propriety of a default judgment should be resolved in favor of the defaulted party. *Id.* The brief length of the delay, the prompt entry of appearance, and the sequence of the parties' filings weigh in OJL's favor and demonstrate that neither OJL nor Attorney Raggs sought to prolong the proceedings. We conclude, therefore, that the breakdown in communication between OJL and Attorney Raggs constitutes excusable neglect and that the trial court abused its discretion by concluding otherwise.[10]

---

[9] Both the trial court and IN 123 cited our Supreme Court's recent decision in *Automotive Finance Corp. v. Liu*, 250 N.E.3d 406 (Ind. 2025), and its judicial-economy reasoning as a reason that we should affirm the trial court's default judgment. As much as we admire the reasoning in *Automotive Finance Corp.* regarding the efficient use of the judiciary's "limited resources" to better serve the public in Indiana, that case is materially distinguishable here. Despite arising in the context of Trial Rule 60(B), that case involved a significant delay—approximately six months—in filing a motion to set aside the judgment. *Id*. at 409. Here, Attorney Raggs entered his appearance five days after the original responsive-pleading deadline, and OJL later asked for an enlargement of time under Trial Rule 6(C).

[10] IN 123 further contends that OJL was required to assert a meritorious defense to the underlying contract dispute, that OJL failed to do so, and that this Court should affirm the default judgment on that basis. Appellee's Br. p. 9. That argument, however, derives from the framework governing a motion to set aside an entered default under Indiana Trial Rule 60(B). Here, OJL opposed the motion for default judgment before any default was entered and sought an enlargement of time under Indiana Trial Rule 6(C), which does not require a party to assert a meritorious defense.

## Conclusion

We conclude that the trial court abused its discretion in granting default judgment and denying OJL's motion for enlargement of time. We, accordingly, reverse and remand with instructions that the trial court set aside the default judgment and afford the parties relief consistent with this opinion.

Reversed and remanded.

Bradford, J., and Felix, J., concur.

ATTORNEY FOR APPELLANT

Tramel R. Raggs
Raggs Law, P.C.
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Greg A. Bouwer
Dylan A. Sears
Koransky Bouwer, P.C.
Dyer, Indiana